UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STEVEN N. KENDALL,                )
          Plaintiff,              )
                                  )    Civ. Action No. 18-10141-PBS
          v.                      )
                                  )
SCOTT MURRAY, M.D. et al.,        )
          Defendants.             )

**MEMORANDUM AND ORDER**

October 17, 2018

SARIS, C.J.

Plaintiff Steven Kendall, who is currently in custody at
Federal Medical Center, Devens ("FMC Devens"), brings this
action under 42 U.S.C. § 1983 alleging that the Federal Bureau
of Prisons, Dr. Scott Murray, Dr. Berhan Yeh, and various named
officers[1] (collectively "Defendants") have been deliberately
indifferent to his medical needs in violation of his Eighth and
Fourteenth Amendment rights. (Docket No. 80, Count I). Plaintiff
has a "Kock Pouch," which is a pouch made from his small
intestine that sits inside his body to hold his stool. On July
20, 2018, Plaintiff moved for a preliminary injunction seeking a
second opinion from a colorectal surgeon or an adult
gastroenterologist to evaluate his Kock Pouch. (Docket No. 81).
Plaintiff alleges that he is having trouble accessing the pouch

---

[1] The government contends that the individually named employees have not been
served.

in the proper way because of a hematoma which puts pressure on the pouch and has lasted for over a year. Plaintiff also asks the Court to order FMC Devens to provide him with a handicap accessible bathroom facility (Count IV and VI).[2]

The Court held an evidentiary hearing on May 26, 2018 via videoconference. At the time of the hearing, Plaintiff was <u>pro se</u>. The Court appointed <u>pro bono</u> counsel in light of the alleged medical emergency. Three additional days of hearings were held ending on August 21, 2018. During the hearings, Plaintiff testified and introduced the expert testimony of Dr. Steven Freedman, a gastroenterologist at the Beth Israel Deaconess Medical Center. The government introduced the testimony of two defendants Dr. Berhan Yeh, the Clinical Director, and Dr. Scott Murray, Plaintiff's treating physician, and submitted Plaintiff's voluminous medical records. After the hearing, the motion is **ALLOWED IN PART** and **DENIED IN PART**.

## I. FINDINGS OF FACT

Based on the evidentiary hearings, the medical records and affidavits, the Court finds the following facts are likely true.

---

[2] The Amended Complaint (Docket No. 80) also asserts claims under Article 26 and 114 of the Constitution of the Commonwealth of Massachusetts (Counts II and V); the Administrative Procedure Act (Count III); the Eighth Amendment for conditions of confinement (Count VII); and the First Amendment (Count VIII).

**A. The Kock Pouch (K-Pouch)**

Plaintiff is a 63-year old man serving a 26-month term of imprisonment for Conspiracy to Commit Unlawful Distribution of Oxycodone. He arrived at FMC Devens on April 12, 2017. He is scheduled to be released in March 2019. Since the mid-1980's Plaintiff has suffered from ulcerative colitis which led to the removal of his colon.[3] Prior to incarceration, Plaintiff received a colostomy during which his doctors created a "Kock Pouch" – a form of continent ileostomy which refashioned Plaintiff's lower intestines into a reservoir that holds waste generated by his digestive system.  A K-pouch system includes the pouch, located inside the body, and a one-way valve on the patient's abdomen that prevents leakage from the reservoir and allows the patient to drain the reservoir. The reservoir is emptied throughout the day by passing a special catheter through the valve, called a stoma, into the pouch. In order to drain the reservoir, a patient is advised to sit over the toilet and near a sink with running hot water to clean the drain catheter.

Plaintiff has been managing his K-pouch by catheterizing himself.  Generally, when his pouch is full, he lies down in a semi-recumbent position on a bed to use a catheter to enter the stoma to empty the pouch, which sometimes spills over. He then

---

[3] When he arrived he also had a medical history of pulmonary embolus, left below knee amputation, right total knee replacement, chronic opioid dependence, hypertension, sleep apnea, and borderline diabetes.

typically empties the stool into a bucket and then the toilet. When he is semi-reclined, he can empty his K-pouch without complications. Sometimes when the K-pouch is not full, he can empty it while sitting on a toilet.

Before incarceration, Plaintiff had complications with his K-pouch including pouchitis, intermittent bleeding and incontinence at the valve site. Since incarceration, he has had some incontinence issues, but there is no credible evidence of significant bleeding.

**B. Medical Treatment at FMC Devens**

Plaintiff's primary care physician at FMC Devens is defendant Dr. Scott Murray, who has a specialty in emergency care medicine. He received his medical degree from the University of Connecticut and finished his emergency medicine residency at the Beth Israel Deaconess Medical Center in Boston. He is board certified in emergency medicine, but has no expertise in gastroenterology. There are no specialists in gastroenterology on site at FMC Devens. Defendant Dr. Berhan Yeh is a Lieutenant Commander in the United States Public Health Service, and is the Clinical Director of FMC Devens. He has his medical degree from Boston University and is board certified in emergency medicine and wound care. Because he did not provide treatment, his knowledge of Plaintiff's use of the K-pouch was not always accurate.

4

In May 2017, shortly after the start of his incarceration,
Plaintiff was sent for an evaluation with a gastroenterologist
due to his pouchitis. The doctor in Nashoba Valley was not
familiar with the K-pouch, although this is unsurprising given
how rare the K-pouch procedure is. Plaintiff received
antibiotics and an enema.

Plaintiff, who has a myriad of other medical issues,
received anti-coagulation medication by self-injection in June
2017.[4] He developed a large hematoma at the injection site in the
lower right quadrant of his abdomen. The hematoma was the size
of Plaintiff's head or small child's basketball, and it pressed
on Plaintiff's stoma when he was in a sitting or standing
position. The hematoma made it difficult for Plaintiff to access
his K-pouch. In July 2017, Dr. Murray sent Plaintiff to have his
hematoma evaluated by the University of Massachusetts Emergency
Department. A doctor recommended conservative management because
of the risk of infection if the hematoma were drained. The CT
scan showed a hematoma measuring 17 x 8 x 9 cm in the abdominal
wall. Plaintiff was going to be admitted for observation, but he
checked himself out against medical advice because he believed
(mistakenly) that the doctors wanted to perform surgery and
overheard one of the surgeons express concern about nicking the

---

[4] He has since been switched to an oral anticoagulant, Warfarin.

K-pouch. In fact, the surgeons recommended conservative management of the hematoma, not surgery.

In December 2017, Plaintiff was given a CAT scan to examine the mass which Dr. Murray has diagnosed as a hematoma. Since then, the mass has shrunk to about 6 cm x 6 cm in size, alleviating some of the pressure. When Plaintiff is semi-reclined, the reduced mass does not significantly interfere with the stoma.

The government disputes that the hematoma is still a significant issue because Plaintiff is able to catheterize himself when lying down. In May 2018, almost a year after Plaintiff developed the hematoma, Dr. Murray saw Plaintiff catheterize himself by lying down. Docket No. 106 at 62:21-22. During a physical examination of Plaintiff in July 2018, Dr. Murray noted that "[w]hen [Kendall] sits up, all of this extra tissue and the residual hematoma flop over the ostomy site, but the ostomy site is widely accessibly [sic] when he is laying [sic] down." Ex. 15 (Bureau of Prisons Health Services Clinical Encounter, July 6, 2018). He also noted that the mass was "clearly getting smaller" and was 6 cm from the opening of the stoma "while [Plaintiff was] lying flat." Id. Based on his observations, Dr. Murray does not intend to order another CAT scan for Plaintiff because in his view the risk of unnecessary radiation does not outweigh the benefits. Docket No. 106 at

80:1-8. Dr. Murray also has no plans at the moment to have a specialist look at the mass or K-pouch to provide a second opinion. He believes a second opinion is unnecessary because Plaintiff can use the K-pouch while lying down and the mass is getting smaller. Id. at 84:4-85:9. At the time of the hearing, the mass on Plaintiff's right side had persisted for nearly 14 months. FMC Devens has contracts with various Boston-area hospitals, including the Beth Israel Deaconess Medical Center, which has specialists with the expertise needed to provide a second opinion.

**C. Expert Opinion**

Dr. Steven D. Freedman, who testified for Plaintiff at the hearing and submitted an affidavit, has expertise in gastroenterology and continent ileostomy. Dr. Freedman specializes in gastroenterology at the Beth Israel Deaconess Medical Center, where he is the Chief of the Division of Translateral Research and Director of the Pancreas Center. He is a professor at Harvard Medical School, has a Ph.D. from Yale University School of Medicine in Cell Biology, and an M.D. from the University of Connecticut. Prior to the hearing, Dr. Freedman reviewed Plaintiff's medical records but he did not physically examine Plaintiff. At the hearing Dr. Freedman explained that the K-pouch was designed for a person to be upright when inserting the drain catheter into the pouch so that

one can tip the drain catheter into the toilet bowl to drain the waste. Docket No. 105 at 100:24-101:9. He also cautioned that Plaintiff's mass may not be a hematoma, as Dr. Murray believes, because a hematoma should resolve on its own in about 60 to 90 days. Id. at 106:2-4. Dr. Freedman was "shock[ed]" that Defendants had not sought a second opinion because the mass had persisted for so long. Id. at 111:13-15. In Dr. Freedman's view, the physical examination of the mass by Dr. Murray was insufficient because such an examination cannot indicate to the physician how deep the mass is or whether it is obstructing the pouch. Id. at 111:17-112:1.

Dr. Freedman opined the standard of medical care in Plaintiff's situation "would be to refer to a colorectal surgeon, ideally someone who has expertise in a K-pouch". Id. at 117:3-6. He said that the fact that Plaintiff must access the K-pouch while lying down indicates he should be seen by a specialist because the K-pouch "was not designed to be accessed while lying down," and the fact that Plaintiff cannot access the stoma anymore while sitting upright indicates "that there's some anatomic problem now that has to be resolved." Id. at 116:12, 24-25. Dr. Freedman said there were significant medical risks if the mass turned into an abscess and it would be potentially "life-threatening" if the K-pouch were perforated. Id. at 117:9, 118:2-9. He recommended three colorectal surgeons at Beth Israel

Deaconess who are qualified to work with K-pouches: Peter Mowschenson, Vitaliy Poylin, and Tom Cataldo. Id. at 120:18-25.

## D. The Bathroom

Plaintiff claims he was not offered access to an ADA-compliant bathroom facility. From April 2017 to November 2017, Kendall was in the Nursing Care Unit at FMC Devens without a handicapped accessible toilet. Then he was placed in the Special Housing Unit (SHU) for diverting his pain medication. When he was returned from the SHU, he was placed in a room with other men who had similar medical issues. He now is in a single cell and has the use of a handicap accessible bathroom across the hallway from his cell, which he says he can use only when the K-pouch is not full. Otherwise, he has to lie down on the bed to empty it. FMC Devens recently offered Kendall a placement in a single handicap cell within a medical housing unit, but he refused. Exhibit 18, "Medical Treatment Refusal." Instead, he opted to stay in his current housing unit. Despite his physical disabilities, Plaintiff exercises robustly and is able to walk at least a quarter of a mile with the aid of a cane or walker.

## E. The SHU

Plaintiff was placed in the Secure Housing Unit ("SHU") twice during this litigation. The facts surrounding the first placement are hotly contested. When Kendall arrived at the room at FMC Devens for the videoconference with the Court on May 23,

2018, his face appeared to have a bruise. He told the Court he was struck by a guard while preparing for his testimony. The government denies these allegations. When he complained that the guard backhanded him, he was placed in the SHU. According to the government, it is standard protocol to place an inmate who accuses a guard of assault in the SHU to protect the inmate. He was allegedly told if he dropped the complaint, he would be placed back in a regular cell. He stayed in the SHU for over a month, from May 23, 2018 until June 29, 2018. The SHU is not handicapped accessible. When he recanted, he was indeed placed back in a normal housing unit. He was also placed in the SHU after testifying in court. The government claims that his was an administrative detention because he was being transferred between the Court and the prison. See 28 C.F.R. § 541.23. Plaintiff claims that the first SHU detention was punitive and retaliatory.

## II. DISCUSSION

### A. Legal Standard

In order to determine whether a preliminary injunction should issue, the Court must weigh (1) the likelihood of success on the merits; (2) the potential for irreparable harm to the plaintiff if the injunction is denied; (3) the balance of the hardship to defendant if enjoined as contrasted with the hardship to plaintiff if no injunction issues; and (4) the

effect of the court's ruling on the public interest. <u>See</u> <u>Wine &</u>
<u>Spirits Retailers, Inc. v. Rhode Island</u>, 418 F.3d 36, 46 (1st
Cir. 2005).

**B. Eighth Amendment Claim**

The Eighth Amendment to the United States Constitution,
which prohibits the infliction of cruel and unusual punishments,
protects prisoners from "deliberate indifference to serious
medical needs." <u>Feeney v. Corr. Med. Servs., Inc.</u>, 464 F.3d 158,
161–62 (1st Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97,
105–06 (1976)).  The Supreme Court has held that deliberate
indifference on the part of prison personnel to the "serious
medical needs" of an inmate constitutes cruel and unusual
punishment because it "offend[s] evolving standards of decency"
that mark the progress of a maturing society. <u>Estelle</u>, 429 U.S.
at 106 (internal quotation omitted).

In order to prove an Eighth Amendment violation based on
inadequate medical care, the plaintiff must satisfy both an
objective and a subjective inquiry. <u>Perry v. Roy</u>, 782 F.3d 73,
78 (1st Cir. 2015).  The objective prong requires proof of a
sufficiently serious medical need, as in "one that has been
diagnosed by a physician as mandating treatment, or one that is
so obvious that even a lay person would easily recognize the
necessity for a doctor's attention." <u>Kosilek v. Spencer</u>, 774
F.3d 63, 82 (1st Cir. 2014) (en banc) (quoting <u>Gaudreault v.</u>

11

Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990)), cert.
denied, Kosilek v. O'Brien, 135 S. Ct. 2059 (Mem.) (2015). The
subjective prong requires that the plaintiff show that prison
officials possessed a sufficiently culpable state of mind,
namely, deliberate indifference to the plaintiff's health or
safety. See Perry, 782 F.3d at 78.  Negligent care or "even
malpractice does not give rise to a constitutional claim;
rather, the treatment provided must have been so inadequate as
'to constitute "an unnecessary and wanton infliction of pain" or
to be "repugnant to the conscience of mankind."'"  Leavitt v.
Corr. Med. Serv., Inc., 645 F.3d 484, 497 (1st Cir. 2011)
(citation omitted) (quoting Estelle, 429 U.S. at 105-06); see
also Kosilek, 774 F.3d at 87 n.9 ("[M]edical imprudence—without
more—is insufficient to establish an Eighth Amendment
violation.").

     For purposes of the subjective prong, "deliberate
indifference defines a narrow band of conduct and requires
evidence that the failure in treatment was purposeful." Kosilek,
774 F.3d at 83 (internal quotation and citation omitted).  "The
obvious case would be a denial of needed medical treatment in
order to punish the inmate." Feeney, 464 F.3d at 162 (quoting
Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993)).  Deliberate
indifference may also lie in "wanton" or "reckless" actions,
although recklessness is understood "not in the tort law sense

but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable." <u>Id.</u> (quoting <u>Watson</u>, 984 F.2d at 540). Deliberate indifference is not demonstrated "[w]here the dispute concerns not the absence of help, but the choice of a certain course of treatment." <u>Torraco v. Maloney</u>, 923 F.2d 231, 234 (1st Cir. 1991). A prison official is not deliberately indifferent if he responds "reasonably to the risk." <u>Burrell v. Hampshire County</u>, 307 F.3d 1, 8 (1st Cir. 2002).

Based on the record and the assessment of the credibility of the witnesses, the Court concludes that Plaintiff has shown a likelihood of success on the merits of the Eighth Amendment claim. Plaintiff has satisfied the objective prong by demonstrating that he has a serious medical need (difficulty properly inserting a catheter into his K-pouch) and the medical care is not adequate (failure to consult a gastrointestinal specialist).  The Court finds Dr. Freedman is fully credible when he opines that the standard of medical care requires a second opinion by a colorectal surgeon or gastrointestinal specialist to assess both the K-pouch and the effect of the nearby mass. To be fair, Doctors Yeh and Murray were acting reasonably and within the medical standard of care when Kendall first came to FMC Devens. They initially consulted with a specialist, and when he developed a mass, they brought him to

13

the emergency room at the University of Massachusetts. When the hematoma persisted, they gave him a CAT scan in December 2017. There is no evidence that the initial approach of conservative management (rather than drainage of the hematoma) violated the medical standard of care or was deliberately indifferent to his medical needs.

However, Defendants have become deliberately indifferent to his medical condition now that the mass has lasted for more than a year. While it has decreased in size, it is still a significant size and appears to be interfering with the effective functioning of the K-pouch. Defendants have provided evidence that Plaintiff has been an inaccurate reporter of his medical issues and has lied about other matters (like an assault by a fellow inmate). He also has not been cooperative with health services after the litigation began in July 2018, when he refused to let Dr. Murray assess his ability to access his K-pouch while lying down. The government also suggests that if this Court ordered a second opinion, there might be a flood of similar requests by other inmates.

Still, the weight of the evidence is that Plaintiff can only empty a full K-pouch while lying down, in a semi-recumbent position, which is not the way the K-pouch is supposed to be used and which creates a serious medical risk to him. Moreover, the objective evidence is that Plaintiff still has a mass near

the stoma, although the exact location and nature of the mass is disputed and may depend on whether Plaintiff is lying down or sitting up. The creation of a K-pouch is a rare procedure and there are no GI specialists on staff who have the expertise to handle complications. Thus, there is a serious medical need which has been diagnosed by a physician with the requisite experience as mandating treatment.

With respect to the subjective prong, the court finds that Plaintiff has met his burden of showing a likelihood of success that Defendants are deliberately indifferent to his serious medical need for addressing the ongoing problem with his K-pouch possibly caused by the hematoma/mass. Further, FMC Devens has been deliberately indifferent to his need to reevaluate the mass, which has persisted. Defendants have not sent Plaintiff to a specialist since the hematoma formed, and neither Dr. Murray nor Dr. Yeh has any expertise in the area and there are no GI specialists at FMC Devens. Dr. Murray also testified that he has no current plan to send Plaintiff to a specialist.

The balance of the harms weighs in Plaintiff's favor. Plaintiff is suffering now from the irreparable harm of having to drain the reservoir lying down rather than upright over a toilet, and there is a serious risk of perforation of the K-pouch from that position. In addition, there is a risk that the mass is not a hematoma because according to Dr. Freedman,

hematomas resolve in 60 to 90 days. A specialist should resolve whether the mass is a hematoma, seroma, or worse.

There are no countervailing government or public interests because Beth Israel Deaconness, which has a contract with FMC Devens, has specialists with knowledge of the K-pouch. There are likely other specialists at UMass as well. Assessing these factors, a preliminary injunction is proper at this point.

## C. Handicap Accessible Toilet

Count IV alleges a violation of the Americans with Disabilities Act ("ADA"). The ADA's protections only extend to state and local correctional facilities. See 42 U.S.C. § 12131(1)(B); see also Pa. Dep't. of Corr. v. Yeskey, 524 U.S. 206, 209-10 (1998)(holding that Title II of the ADA covers state prisoners). However, as alleged in Count VI, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), applies to federal prisoners who are in the Bureau of Prisons' care.[5]

---

[5] The 1978 amendment to the Rehabilitation Act of 1973 added the phrase "under any program or activity conducted by any Executive agency or by the United States Postal Service" to Section 504(a) and required the head of each Executive Agency to promulgate regulations "to carry out" the 1978 amendment. See Pub. L. No. 95-602, tit. IV, § 119, 92 Stat. 2955, 2982 (1978).
> In accordance with the 1978 amendment to section 504(a) . . . the Department of Justice submitted the proposed regulations to the appropriate authorizing congressional committees . . . [and] stated in the supplementary information concerning the regulations that the regulations apply "to all programs and activities conducted by the Department of Justice." Thus, the regulations governed "the activities of over 30 separate subunits in the Department, including, for example . . . the Bureau of Prisons." The regulations are published at 28 C.F.R. §§ 39.101–.170 (2012).

Cooke v. U.S. Bureau of Prisons, 926 F. Supp. 2d 720, 728-29 (E.D.N.C. 2013) (internal citations omitted).

Parties did not sufficiently brief Plaintiff's disability claims; however, for purposes of a preliminary injunction, Plaintiff has not sufficiently alleged irreparable harm. While Defendants did not provide a handicap accessible toilet to Plaintiff when he came out of the SHU, or while he was in the SHU, Plaintiff now has access to a handicap facility across the hall from his cell, and he has declined the offer of a cell with a handicap toilet in the cell. While he does have trouble ambulating, the weight of the evidence is that he moves well enough to use the handicap accessible toilet across the hall. Plaintiff has not shown any irreparable harm while he stays in his current cell.

## ORDER

The Court **ALLOWS IN PART** and **DENIES IN PART** Plaintiff's Motion for Preliminary Injunction (Docket No. 81). The Court allows Plaintiff's motion for relief based on the Eighth Amendment claim. Defendant is ordered to, within 30 days, get a second opinion evaluating Plaintiff's Kock Pouch and the mass from a colorectal surgeon or gastroenterologist who has expertise in continent ileostomy. The Court denies the motion with respect to the claim that Plaintiff has not been given a cell with a handicap accessible toilet.

SO ORDERED.

/s/ Patti B. Saris

17

PATTI B. SARIS
CHIEF UNITED STATES DISTRICT JUDGE